# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES T. DIEHL, | No. 4:25-CV-00019 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| PENNSYLVANIA PAROLE BOARD, | |
| Respondent. | |

## MEMORANDUM OPINION

### AUGUST 11, 2025

Petitioner Charles T. Diehl initiated this action by filing a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges several denials of parole, claiming that the decisions by the Pennsylvania Parole Board violated his procedural and substantive due process rights. Because Diehl has not established a constitutional violation, the Court will deny his Section 2254 petition.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

Diehl is currently serving an aggregate 25- to 50-year sentence.[1] That sentenced is comprised of 20 to 40 years' incarceration for aggravated assault and arson (10 to 20 years' incarceration for each offense, to be served consecutively),[2] and attempted rape (5 to 10 years' incarceration, to be served consecutively to

---

[1]   *See* Doc. 3-10; Doc. 8-2 at 2.
[2]   *See Commonwealth v. Diehl*, CP-23-CR-0008757-1988 (Pa. Ct. Com. Pl., Del. Cnty.).

sentences for aggravated assault and arson).[3] These sentences were entered in 1989 by the Court of Common Pleas of Delaware County, Pennsylvania, and the Court of Common Pleas of Philadelphia County, Pennsylvania, respectively. His controlling minimum date was December 2, 2013, and his maximum incarceration date is December 2, 2038.[4]

Diehl has been denied parole in 2013, 2015, 2016, 2018, 2019, 2020, and 2024.[5] The only parole denial he challenged in state court appears to be the 2024 decision.[6] The Parole Board dismissed Diehl's administrative challenge as unauthorized, explaining that the regulation authorizing administrative relief does not apply to discretionary decisions denying parole.[7] Diehl sought review in the Commonwealth Court of Pennsylvania, which likewise dismissed his challenge.[8] In its August 12, 2024 decision, the Commonwealth Court concluded that it was

---

[3] *See Commonwealth v. Diehl*, CP-51-CR-0422441-1988 (Pa. Ct. Com. Pl., Phila. Cnty.); Doc. 3-10. On Diehl's May 11, 2002 Pennsylvania Department of Corrections (DOC) DC-16E "Sentence Status Summary," (Doc. 8-2), it states that on May 10, 2002, there was a clarification of sentence" as to the Philadelphia County attempted rape offense, explaining that Diehl was "originally sentenced in Philadelphia County on 9/28/89 to Attempted Rape" but that "[u]pon reconsideration of sentence on 10/19/89 the charge was changed to Rape." *See* Doc. 8-2 at 1. Diehl attached as an exhibit a copy of the DOC's DC-300B form for this October 19, 1989 reconsideration of sentence. *See* Doc. 3-1. However, Diehl has provided an updated DC-16E form, dated May 10, 2023, which states that the Philadelphia County offense was indeed for attempted rape and explicitly notes that "Version 3" of the DC-16E form was "created to reflect the addition of offense code 901 [criminal attempt]" to the Philadelphia County rape offense. *See* Doc. 3-10.
[4] *See* Doc. 3-10.
[5] *See* Doc. 8 ¶¶ 5-12.
[6] *See* Doc. 3-12; Doc. 8-11.
[7] *See* Doc. 3-13.
[8] *See* Doc. 8-11.

2

without jurisdiction to entertain his challenge to the Parole Board's 2024 discretionary decision to deny parole.[9]

Diehl unsuccessfully attempted to seek reconsideration of the Commonwealth Court's decision,[10] and eventually sought review in the Supreme Court of Pennsylvania (although he had to seek allowance of appeal *nunc pro tunc* due to administrative delays at the Commonwealth Court and with the prison mail system).[11]  While his petition to appeal *nunc pro tunc* was pending, Diehl filed the instant Section 2254 petition in this Court.[12]  The Pennsylvania Supreme Court ultimately denied Diehl's petition to appeal *nunc pro tunc* on April 10, 2025.[13]

Diehl's Section 2254 is now fully briefed and ripe for review.  For the following reasons, the Court finds that no habeas relief is due.

## II.  DISCUSSION

Diehl raises two grounds for relief in his Section 2254 petition.  He first contends that the Parole Board violated his Fourteenth Amendment procedural due process rights by informing him at various parole denials that it would consider "treatment-oriented goals" at future parole interviews, but then proceeded to deny parole based on reasons that he claims are related to his original crimes of

---

[9]   *See id.*
[10]  *See* Docs. 3-18, 3-19, 3-26.
[11]  *See* Docs. 3-30, 3-35.
[12]  *See generally* Doc. 1.
[13]  *See* Doc. 17 ¶ 3.

3

conviction.[14] Second, he contends that the Parole Board violated his Fourteenth Amendment substantive due process rights by relying on "erroneous information" regarding the attempted rape conviction and the "negative recommendation of the prosecuting attorney," a negative recommendation he claims does not exist.[15]

Respondent raises a host of defenses to Diehl's petition, asserting that many of his challenges are barred by the statute of limitations, that he failed to exhaust state-court remedies, and that the claims fail on the merits. Diehl, for his part, spends nearly his entire 25-page memorandum of law discussing the factual background of his case and the minutia of his attempts to exhaust state-court remedies rather than the merits of his claims.[16] Indeed, the first 21 pages of his memorandum of law are devoted solely to those two subjects,[17] and only a single paragraph discusses the specific due process claims at issue.[18]

The Court, however, need not consider whether Diehl exhausted state-court remedies or whether any specific challenge to the parole denials is barred by

---

[14] *See* Doc. 3 at 1.
[15] *See id.*
[16] *See* Doc. 3 at 1-21.
[17] *See id.*
[18] *See id.* at 22-23. In his memorandum of law, Diehl purports to incorporate by reference his May 2024 memorandum of law submitted to the Pennsylvania Commonwealth Court. *See id.* at 21. Yet that memorandum, too, is bereft of any real analysis of his due process claim (only ground one of the instant Section 2254 petition was presented to the Commonwealth Court), and instead primarily focuses on whether the claim is reviewable. *See generally* Doc. 3-14 at 5-13. When Diehl does discuss his specific due process claim, he simply asserts, in conclusory fashion, that the way his parole reviews were handled violated his due process rights under the state and federal constitutions. *See id.* at 5-6, 11-12.

4

Section 2254's statute of limitations. That is because Diehl's Fourteenth Amendment claims do not warrant federal habeas relief.

### 1. Procedural Due Process Claim

In his first ground for relief, Diehl argues that his procedural due process rights were violated when the Parole Board told him that certain "treatment-oriented goals" would be considered in future parole interviews and then—even when Diehl achieved those goals—the Parole Board denied parole based on other "unchanging" factors related to his crimes of conviction.[19] As examples of "treatment-oriented goals," he asserts that the Parole Board stated that, at future interviews, it would consider whether he had received a favorable institutional recommendation for parole and maintained a clear conduct record.[20]

A Pennsylvania inmate who is eligible for parole is entitled to have his parole application "fairly considered."[21] Diehl appears to contend that, because he successfully achieved the "treatment-oriented goals" mentioned by the Parole Board but was still denied parole, his parole applications were not fairly considered and thus his procedural due process rights were violated.[22]

---

[19]  *See* Doc. 14 at 1-4.
[20]  *See id.* at 2.
[21]  *See Newman v. Beard*, 617 F.3d 775, 783 (3d Cir. 2010) (citing *Mickens-Thomas v. Vaughn*, 321 F.3d 374, 393 (3d Cir. 2003); *Jamieson v. Commonwealth, Pa. Bd. of Prob. & Parole*, 495 A.2d 623, 627 (Pa. Commw. Ct. 1985) ("[A] prisoner does have the right to apply for parole . . . and have that application fairly considered by the Board.")).
[22]  *See* Doc. 14 at 3.

This contention is unpersuasive for several reasons. First, Diehl has proffered no evidence that his favorable institutional recommendation for parole and clear conduct record were not considered by the Parole Board. Nor does he allege or establish that his parole was denied because the Parole Board erroneously determined that he had failed to achieve these "treatment-oriented goals."

Second, simply because Diehl achieved the "treatment-oriented goals" does not entitle him to parole, nor does it prevent the Parole Board from considering other factors in its decision. To the contrary, under Pennsylvania's parole statute, 61 PA. CONS STAT. § 6135, the Parole Board must consider numerous factors, including the nature and circumstances of the offense(s), any recommendations by the trial judge or prosecuting attorney, the "general character and background of an inmate," any victim statement submitted, the sentencing hearing notes of testimony regarding "the nature and circumstances of the offense committed," the conduct of the person while incarcerated, the prisoner's mental and behavioral condition and history, history of family violence, and the inmate's "complete criminal record."[23]

The Parole Board, in its at-issue denials, averred that it had considered these foregoing factors, reviewed Diehl's file, and conducted an interview.[24] Thus, it may well be possible that the Parole Board "fairly considered" Diehl's rehabilitation accomplishments in prison and yet denied parole based on other

---

[23] 61 PA. CONS STAT. § 6135(a).
[24] See Docs. 3-3, 3-4, 3-5, 3-6, 3-7, 3-9, 3-11.

factors that it was statutorily required or permitted to consider. Indeed, the parole denials in 2018, 2019, 2020, and 2024 reflect that the Parole Board did just that.[25] Accordingly, Diehl has failed to establish that his parole applications were not "fairly considered" by the Parole Board, and thus he has not shown that the parole denials violated procedural due process.

### 2. Substantive Due Process Claim

In his substantive due process claim, Diehl asserts that the Parole Board relied on inaccurate information when it denied his parole applications. Specifically, Diehl contends that Parole Board relied on a conviction for rape instead of attempted rape, as well as a nonexistent "negative recommendation" from the prosecuting attorney.[26]

The Fourteenth Amendment's due process clause "contains a substantive component that bars certain arbitrary, wrongful government actions regardless of

---

[25] *See* Doc. 3-6 (2018 decision citing, *inter alia*, risk and needs assessment indicating level of risk to the community; reports, evaluations, and assessments of risk indicating risk to the community); Doc. 3-7 (2019 decision citing, *inter alia*, risk and needs assessment indicating level of risk to the community; reports, evaluations, and assessments of risk indicating risk to the community, minimization/denial of the offenses committed, refusal to accept responsibility, lack of remorse, nature of the case); Doc. 3-9 (2020 decision citing, *inter alia*, risk and needs assessment indicating level of risk to the community; reports, evaluations, and assessments of risk indicating risk to the community, lack of remorse); Doc. 3-11 (2024 decision citing, *inter alia*, risk and needs assessment indicating level of risk to the community; reports, evaluations, and assessments of risk indicating risk to the community, nature of crime). The 2018 parole decision appears to be the first time that Diehl received a positive recommendation for parole from the Department of Corrections. *Compare* Docs. 3-3, 3-4, 3-5, *with* Doc. 3-6.

[26] *See* Doc. 14 at 4.

the fairness of the procedures used to implement them."[27]  With respect to parole determinations, the United States Court of Appeals for the Third Circuit has held that a parole board's decision can violate an inmate's substantive due process rights if it applies "standards that are divorced from the policy and purpose of parole" or other "impermissible criteria."[28]  Specifically, the specter of a substantive due process violation is raised only when "a parole board considers a factor that 'shocks the conscience.'"[29]  If, however, there is "some basis" for the parole board's decision, and that basis is not "constitutionally impermissible" or conscience-shocking, a substantive due process challenge will fail.[30]

Diehl's assertions in ground two are not without factual support.  From the DOC's varying versions of its DC-16E forms, it appears that Diehl's conviction for attempted rape was inaccurately identified as rape from May 2002 until it was corrected in May 2023.  Furthermore, Diehl has undertaken extensive investigation to determine the nature and substance of the purported "negative recommendation"

---

[27] *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).
[28] *See Block v. Potter*, 631 F.2d 233, 236 & n.2, 238, 240 (3d Cir. 1980); *see also Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996) ("In *Block*, the . . . panel majority concluded that in [using arbitrary criteria for denying parole], the [Parole Board] violated substantive due process in grounding its action on constitutionally impermissible reasons." (internal quotation marks omitted)).
[29] *Holmes v. Christie*, 14 F.4th 250, 267 (3d Cir. 2021) (quoting *Newman*, 617 F.3d at 782).
[30] *See Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001).

from the prosecuting attorney, resulting in what appears to be Respondent's concession that no such negative recommendation exists.[31]

Had these inaccurate factual predicates been the sole basis for Diehl's denials of parole, he may very well have established a substantive due process violation by the Parole Board.[32] His due process claim falls short, however, because (1) there is no evidence that the Parole Board was influenced by the inaccurate offense identification; and (2) while the Parole Board may have relied on a nonexistent "negative recommendation from the prosecuting attorney," that was not the only basis for the at-issue parole denials.

Initially, Diehl has not proffered *any* evidence that the inaccurately reported offense of rape (rather than attempted rape) adversely affected the at-issue parole decisions. There is nothing in the parole denials reflecting such an effect, nor has Diehl offered any other proof that the Parole Board based its denials on a rape conviction rather than a conviction for attempted rape. Indeed, Diehl's singular

---

[31] *See* Doc. 3-8 (decision by Pennsylvania Office of Open Records granting Diehl's appeal and requiring Delaware County District Attorney's Office to disclose any "negative recommendation letter from the prosecuting attorney" regarding parole in 2016 and 2018); Doc. 8-10 (revised June 10, 2024 Parole Board decision removing the "negative recommendation made by the prosecuting attorney" factor from its April 5, 2024 denial).

[32] *See, e.g.*, *Gambino v. Morris*, 134 F.3d 156, 162 (3d Cir. 1998) (concluding that United States Parole Commission lacked rational basis to deny parole based on prisoner's alleged but unfounded membership in an organized crime family) (citing *Campbell v. U.S. Parole Comm'n*, 704 F.2d 106, 109 (3d Cir. 1983) ("[T]he Commission may not base its judgment as to parole on an inaccurate factual predicate.")); *Monroe v. Thigpen*, 932 F.2d 1437, 1441-42 (11th Cir. 1991) (holding that parole board's reliance on "knowingly false information" to deny parole constitutes arbitrary and capricious state action that violates substantive due process).

focus on rape versus attempted rape ignores his other serious offenses: aggravated assault and arson. Furthermore, it strains credulity to believe that a conviction for attempted rape would be viewed in a dramatically different fashion than a conviction for the completed offense, at least with respect to a prisoner's potential risk to the community and fitness for parole.

Second, while the Parole Board may have relied on a nonexistent "negative recommendation" from the prosecuting attorney in its parole denials from 2016, 2018, 2020, and April 2024 (before the June 2024 revision), this was not the only basis for those denials. In its 2016 decision, the Parole Board additionally relied on the risk and needs assessment indicating level of risk to the community; reports, evaluations, and assessments of risk indicating risk to the community; and the negative recommendation from the DOC. In its 2018 decision, the Parole Board additionally listed the risk and needs assessment indicating level of risk to the community; as well as reports, evaluations, and assessments of risk indicating risk to the community. In its 2020 decision, the Parole Board additionally cited the risk and needs assessment indicating level of risk to the community; reports, evaluations, and assessments of risk indicating risk to the community; and lack of remorse. And finally, it its 2024 decision, the Parole Board noted the risk and needs assessment indicating level of risk to the community; reports, evaluations,

and assessments of risk indicating risk to the community; and the nature of the crime.

Thus, while it appears that as part of several denials, the Parole Board may have relied on inaccurate information regarding the prosecuting attorney's parole recommendation, it cannot be said that the Parole Board's denials were solely driven by that particular factor. Diehl's case, therefore, materially differs from cases where a substantive due process violation was found because the parole authority based its denial of parole entirely on an inaccurate factual predicate.[33]

"[F]ederal courts, on habeas review, are not to 'second-guess parole boards,' and the requirements of substantive due process are met if there is some basis for the challenged decision."[34] Despite what likely could be considered inaccurate information regarding the prosecuting attorney's negative parole recommendation, the Parole Board nevertheless provided "some basis" for its parole denials in 2016, 2018, 2020, and 2024 that did not rest on this challenged information. Diehl, therefore, has failed to establish a substantive due process violation.

---

[33] *Cf. Gambino*, 134 F.3d at 162 (improperly denying parole based on unfounded membership in organized crime family); *Monroe*, 932 F.2d at 1441-42 (improperly denying parole based on knowingly false information regarding prior alleged sexual assault); *Kohlman v. Norton*, 380 F. Supp. 1073, 1074-75 (D. Conn. 1974) (improperly denying parole based on unfounded allegation of armed robbery when there was no evidence defendant was armed during offense).

[34] *Hunterson v. DiSabato*, 308 F.3d 236, 246 (3d Cir. 2002) (quoting *Coady*, 251 F.3d at 487).

### III. CONCLUSION

For the foregoing reasons, the Court will deny Diehl's petition for a writ of habeas corpus under 28 U.S.C. § 2254. The Court likewise declines to issue a certificate of appealability, as Diehl has failed to make a substantial showing of the denial of a constitutional right,[35] or that "jurists of reason would find it debatable" whether this Court's procedural rulings are correct.[36] An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[35] 28 U.S.C. § 2253(c)(2).
[36] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).